Slip Op. 01-61

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | |
| : | Before: WALLACH, Judge |
| v. : | Court No.: 00-05-00229 |
| : | |
| W. WEBER CO., INC., and FRONTIER : | |
| INSURANCE COMPANY, : | |
| Defendants. : | |

Stuart E. Schiffer, Acting Assistant Attorney General; David M Cohen, Director; A. David Lafer, Senior Trial Counsel; and Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice; Frank Sharp, Office of the Associate Chief Counsel of the United States Customs Service, of counsel, for Plaintiff.

Weltz & Posner, (Herbert T. Posner), for Defendant W. Weber Co.

Law Offices of Elon A. Pollack, (Elon A. Pollack), for Defendant Frontier Insurance Company.

# Decision and Order

Defendant W. Weber Co., Inc. (hereinafter, "W. Weber" or "Movant") has filed a Motion to Quash Service and Dismiss for Lack of Personal Jurisdiction (the "Motion to Dismiss") alleging, inter alia, that service of the Summons and Complaint on W. Weber was insufficient. The Movant argues that service of those papers was actually upon Norman Pierson, an officer of Weber-Aries, Inc., a company, the relationship of which to W. Weber is disputed by the parties.

## Factual Background

The evidence before the court demonstrates:

1. The Declaration of Service states that on September 11, 2000, the papers were delivered "to Norman Pierson, President of Weber/Aries, who is authorized to accept service of process on behalf of Weber/Aries, at the offices of WEBER/ARIES, 22 West 21st St. . . ." The Complaint was filed with the Court on May 23, 2000.

2. A Declaration by the process server says he served the Complaint on Pierson, who then

introduced him to Paul Aronson, who represented himself as "...a former Vice-President of W. Weber who still did some consulting for W. Weber."

3. In his deposition, Pierson said that "after they [the papers] were put into my hands, I went in to see Paul Aronson, who was in the office that day, and I told him that there was someone there to serve W. Weber with papers. . . . Paul told the customs agent his name, I believe, and while, again, I don't remember any exact language, the customs agent at that time could have presented Paul Aronson directly with the papers, but did not."

4. In an Affidavit, Roger Weber, W. Weber's President and Chief Executive Officer, states that Pierson was not authorized to accept service for W. Weber. He says nothing about Aronson.

5. In his deposition, Aronson made the following pertinent statements:

> Q: How long were you with W. Weber?
> A: Ten years.
> * * *
> Q: When did you resign?
> A: I don't remember.

Aronson deposition at p.8.

> A: I only own a third of the business as a stockholder.

Aronson deposition at p. 53.

> Q: Are you a director of W. Weber?
> A: I don't think so. I never knew that, but I don't think so.

Aronson deposition at p.54.

6. W. Weber's response to Plaintiff's Interrogatories states:

> Interrogatory 6. Identify the relationship between W. Weber Co., Inc. and Paul Aronson, including the details of the termination, in [sic] any, of any such relationship.
>
> Response: Paul Aronson is a shareholder in W. Weber Co.

7. Aronson was listed as W. Weber's Vice President in a letter dated June 13, 1994 from the company's attorneys, Weltz & Posner, to the United States Customs Service.

8. Aronson continued, at least until July 17, 2000, as Vice President of W. Weber. The record contains a letter of that date purporting to effect his resignation from that position.

9. In an Inventory Purchase Agreement ("the IPA") between W. Weber and "Weber-Aires, Inc." it is agreed that Paul Aronson "shall enter into an employment agreement with [Weber-Aires]..." A copy of that employment agreement is not in the record. Aronson signed the IPA as a shareholder of W. Weber.

10. Minutes of a Special Meeting of Board of Directors of W. Weber, dated May 19, 1998, list Paul Aronson among the three directors present.

## Relevant Law

CIT Rule 4(h) provides that service upon a domestic corporation shall be effected by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process", or effected in accordance to the law of the state in which service is effected -- here, New York.

New York CPLR 311(a) provides the following means of service of process on a corporation:

> (a) Personal service upon a corporation or governmental subdivision shall be made by delivering the summons as follows:
> 1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service. A business corporation may also be served pursuant to section three hundred six or three hundred seven of the business corporation law. (emphasis added)

Thus, if Mr. Aronson was, as a matter of fact, still a director of W. Weber, and if he did "receive" service, it would be effective under New York law, and, by extension, the Rules of this Court.

New York Business Corporation Law § 703, Election and term of directors, provides:

> (a) At each annual meeting of shareholders, directors shall be elected to hold office until the next annual meeting except as authorized by section 704 (Classification of directors).
> * * *
> (b) Each director shall hold office until the expiration of the term for which he is elected, and until his successor has been elected and qualified.

There is no evidence in the record to indicate the date on which Aronson's term began, nor its duration. The Certificate of Incorporation does not specify a term. There is evidence in the record that Aronson was a director as of May 19, 1998. There is no evidence to show a termination or resignation date. In the absence of such evidence, the New York courts have tended to conclude that a director "continued to function as a director of the corporation with all the rights and obligations concomitant with that position." Matter of Brenner v. Hart Systems, Inc., 114 A.D.2d 363, 365, 493 N.Y.S.2d 881, 883 (2d Dept. 1985).[1]

## Analysis

While no witness says Pierson or the process server actually handed the papers to Aronson, there is a consensus that Aronson was told "...there was someone there to serve W. Weber with papers." In this context, it appears that the "questioned process" was brought "within the purview of" Mr. Aronson.

Since W. Weber has the corporate records within its possession, and has declined to provide any document indicating Aronson resigned as a corporate director, personal service on the corporate Defendant was effectively made under New York CPLR 311(a). Accordingly, this Defendant's Motion to Dismiss is denied.

## Order

W. Weber's Motion to Dismiss having come before the court, and the court having reviewed the pleadings and papers on file herein and good cause appearing therefor, it is hereby

---

[1] New York courts have shown some flexibility regarding service on corporations. Where a witness for the respondent admitted that the summons was actually received by the respondent's authorized agent within two hours after the process server claimed, the court concluded that "the process server acted reasonably and diligently in bringing the questioned process within the purview of the person to be served[.]" Castro de Velutini v. Velutini, 144 A.D.2d 302, 303-304, 534 N.Y.S.2d 377, 378 (1988). Where a process server gave the summons to a receptionist who in turn gave it to the person to be served, service was held to be effective. Conroy v. International Terminal Operating Co., Inc., 87 A.D.2d 858, 859, 449 N.Y.S.2d 294 (1982); Green v. Morningside Heights Housing Corp., 13 Misc.2d 124, 125, 177 N.Y.S.2d 760, 761 (1958).

ORDERED, ADJUDGED and DECREED that the Motion to Dismiss be, and hereby is, denied in its entirety.

_____
Evan J. Wallach, Judge

Dated:  May 24, 2001
        New York, New York